**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES A. MITCHEL,<br><br>    Plaintiff,<br><br>   v.<br><br>CITY OF SANTA ROSA,<br><br>    Defendant.<br>_____/ | No. C 09-05004 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES AS RULE 11 SANCTIONS** |

On December 28, 2011, the Ninth Circuit Court of Appeals issued a memorandum disposition affirming in part and reversing in part two of this Court's prior orders in this case. Dkt. 103. The Ninth Circuit reversed this Court's award of sanctions to defendant, reversed the dismissal of two of plaintiff's claims, and requested that this Court determine whether it should exercise its pendent jurisdiction over the remaining claims or remand them to state court. On April 13, 2012, plaintiff James Mitchel filed a Motion to Remand and a Motion to Dismiss Sanctions. Dkt. 113. On the same day, defendant City of Santa Rosa (the "City") filed a Motion For Attorney's Fees as Rule 11 Sanctions.

On May 16, 2012, the Court entered an Order granting plaintiff's Motion to Remand, and stated that an Order resolving the motions for attorney's fees as Rule 11 sanctions would be forthcoming. The Court now considers defendant's motion for attorney's fees, and GRANTS defendant's motion for fees under Rule 11.

**BACKGROUND**

**I.  *Mitchel I* and Arbitration**

This case arises out of plaintiff James Mitchel's termination from his employment as a Police Captain with the Santa Rosa Police Department ("SRPD"), and from a decision by an arbitration panel that plaintiff was terminated with just cause. The following facts are taken from the Court's prior orders. *See* Dkts. 60, 75, and 85.

Beginning in 2007, various subordinate officers in the SRPD filed a series of internal discrimination complaints against plaintiff and SRPD's police chief, Edwin Flint. According to plaintiff, the first complaint, filed in January 2007 by Officer Erin Holroyd, was an informal complaint about gender disparity. These complaints included allegations of gender disparity in the SRPD as well as claims of hostile work environment, discrimination, and retaliation as a result of airing the gender disparity concerns.

On February 7, 2008, plaintiff was told that the City had commenced an internal affairs investigation into the discrimination complaints. A week later, plaintiff was interviewed by the investigator, Edward Kreins. A month later, plaintiff was provided with a copy of the Kreins' investigative report, which included Kreins' opinions as well as excerpts from the interviews of plaintiff and more than twenty other employees of SRPD. When plaintiff went to pick up a copy of the report from the Assistant City Attorney, Caroline Fowler, he witnessed Fowler providing a copy of the report to Kathy Warr, one of the discrimination complainants. Plaintiff contacted Chief Flint, and after Chief Flint's counsel complained to the City, the City immediately requested that all the complainants refrain from reading the report and return their copies to the City.

Thereafter, plaintiff filed suit against the City in Sonoma County Superior Court, alleging multiple causes of action including breach of defendant's duty of confidentiality, violation of the privacy provisions of the California Constitution, as well as violation of his federal constitutional rights to privacy and due process, infliction of emotional distress, and gender discrimination. The lawsuit was removed to this Court on May 29, 2008 on the basis of federal question jurisdiction. *See Mitchel v. City of Santa Rosa* ("*Mitchel I*"), No. 08-2698 SI. Meanwhile, SRPD terminated plaintiff, effective May 30, 2008, and plaintiff amended his complaint to add a retaliation claim in relation to the termination.

Defendant moved to dismiss the complaint on multiple grounds, including that plaintiff had failed to exhaust his administrative remedies with respect to certain claims and had failed to present other claims to the City before filing a complaint in court, as required by the California Tort Claims Act. By order dated October 7, 2008, the Court granted defendant's motion and dismissed the entire complaint without prejudice.

Meanwhile, on plaintiff's request, the termination dispute was submitted to binding arbitration pursuant to Section 56 of the Santa Rosa City Charter. The arbitration occurred before a panel of three arbitrators: Victor Thuesen, plaintiff's appointee; Kathleen Kelly, defendant's appointee; and Carol Vendrillo, the neutral chair. The arbitration hearing commenced on September 15, 2008. The first day of the hearing was devoted to plaintiff's argument that the City Manager, Jeff Kolin, lacked authority to terminate plaintiff from his position as Police Captain. The panel found against plaintiff on that issue. The remainder of the hearing was devoted to the propriety of plaintiff's termination. During the hearing, plaintiff presented 18 witnesses and submitted more than 30 exhibits. Ultimately, on July 10, 2009, the panel found that the City had just cause for terminating plaintiff. The panel found that, despite an order not to discuss the ongoing investigation into the internal discrimination complaints, plaintiff had engaged in a campaign to discredit the complainants and to solicit support among his colleagues, and had lied to the investigator about these actions. The panel further found that plaintiff had been dismissive and intimidating towards the complainants, conduct that went "beyond the bounds of reasonable professional behavior."

## II. *Mitchel II:* First Amended Complaint and First Dismissal Order

Plaintiff filed this action (*"Mitchel II"*) in state court on September 30, 2009, alleging thirteen claims: (1-4) violation of the right to due process; (5) conspiracy to violate due process; (6) gender discrimination; (7) wrongful termination in violation of public policy; (8) breach of the duty of confidentiality; (9) injunctive relief; (10) writ of administrative mandamus; (11-12) violations of California's Public Safety Officers Procedural Bill of Rights ("POBOR"); and (13) petition to vacate the arbitration decision. Plaintiff sought injunctive relief, administrative mandamus ordering the arbitration panel to set aside its decision and give plaintiff another hearing, and vacatur of the arbitration

decision. Defendant removed the action to this court on October 20, 2009, again on the basis of federal question jurisdiction, as the first five claims were alleged under the U.S. Constitution and 42 U.S.C. § 1983. *See* Dkt. 1.

On the City's first motion to dismiss, the Court issued an order dismissing the federal claims (claims 1-5) and the claims for breach of the duty of confidentiality (8) and parts of the POBOR claims (11 and 12) with prejudice; and dismissed the claims for gender discrimination (6), wrongful termination in violation of public policy (7), petition to vacate the arbitration decision (13), and the remaining portions of the POBOR claims (11 and 12) with leave to amend. *See* Feb. 17, 2010 Order, dkt. 60. In the same Order, the Court denied the City's first motion for sanctions. *Id.*

Regarding claim 13, for vacatur of the arbitration decision, plaintiff argued that the arbitration panel erred by declining to consider his POBOR contentions after the panel concluded that it lacked jurisdiction to do so. The statute governing POBOR states that the "superior court shall have initial jurisdiction" over such claims. Cal. Gov't Code § 3309.5(c). In the Feb. 17, 2010 Order, the Court agreed with plaintiff that the statute nowhere states superior courts have "exclusive" jurisdiction, but noted the statute grants them "initial jurisdiction," and found that "plaintiff cannot, as a matter of law, show that the panel exceeded its powers, substantially prejudiced plaintiff by concluding it could not consider the POBOR claims, or committed any other act justifying vacatur of the decision." Feb. 17, 2010 Order at 14.

Also in claim 13 seeking vacatur, plaintiff had alleged that arbitrator Kelly had improperly engaged in ex parte communication with the City and then "unduly influenced the neutral chair with information taken outside the hearing process." The Court stated that "plaintiff's conclusory allegation of misconduct, unsupported by any specific factual allegations, does no more than raise a sheer possibility that a defendant has acted unlawfully." *Id.* at 14 (*citing Ashsroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court dismissed claim 13 with leave to amend the allegations of misconduct by arbitrator Kelly.

Along with its motion to dismiss the FAC, defendant had also moved for Rule 11 Sanctions on a number of grounds, including that many of the causes of action were previously found untenable in *Mitchel I* by this Court, and that the allegations of misconduct in the SRPD and by arbitrator Kelly were

4

1 unsubstantiated. In its Order, the Court stated: "Although the Court finds that sanctions are not
2 warranted at this time, the Court agrees with defendant that plaintiff's and counsel's conduct may
3 ultimately prove to be sanctionable." Feb. 17, 2010 Order at 15. The Court specifically pointed to the
4 re-filing of the section 1983 violations, the frivolous gender discrimination claim, and the failure to
5 provide a basis for the allegations of misconduct against SRPD and Kelly. *Id.*

6 Following the Feb. 17, 2010 Order, no federal causes of action remained.

### III. *Michel II*: Second Amended Complaint and Second Dismissal Order

On April 26, 2010, plaintiff filed a Second Amended Complaint (Dkt. No. 61) ("SAC"), which re-alleged the gender discrimination (6), wrongful termination in violation of public policy (7), temporary and injunctive relief (9), writ of administrative mandamus ordering that the arbitration panel's decision be set aside (10), and POBOR (11 and 12) causes of action from the First Amended Complaint. Plaintiff chose not to re-allege the Thirteenth cause of action for vacatur in the SAC, omitting entirely the previously-made allegations against arbitrator Kelly.

The City then moved to dismiss these claims and moved again for sanctions against plaintiff Mitchel and his attorney, Scott Lewis. On April 26, 2010, the Court issued an order dismissing the remainder of plaintiff's claims and granting sanctions. *See* Apr. 26, 2010 Order, dkt. 75. In regards to the termination-related claims, the Court found that, because Mitchel had omitted the claims against arbitrator Kelly and any other ground to support vacatur of the arbitration decision, Mitchel had effectively "concede[d] the validity of the arbitration panel's ruling." Apr. 26, 2010 Order at 3. Therefore, the Court dismissed with prejudice all claims arising from Mitchel's termination, including the Sixth, Seventh, Ninth, and Tenth causes of action. In relation to the POBOR claims, the Court found that Mitchel had failed to comply with the requirements of the California Tort Claims Act (the "TCA"). Therefore, the Court dismissed with prejudice the Eleventh and Twelfth causes of action as well. *Id.*

The Court also granted the City's motion for sanctions against both Mitchel and Lewis. In awarding sanctions, the Court stated,

> The Court agrees with the City that some of plaintiff's and Mr. Lewis's conduct is sufficiently serious to warrant sanctions. In particular, the Court is troubled by the circumstances surrounding the misconduct allegations against Ms. Kelly. In the previous version of the complaint, plaintiff made serious but vague allegations that Ms.

5

> Kelly had acted improperly in her role as an arbitrator. After being advised by the Court that any such claim against Ms. Kelly needed to be supported by specific factual allegations, plaintiff completely omitted the claim from his SAC. The Court agrees with the City that the most reasonable inference to be drawn is that plaintiff and Mr. Lewis never had a legitimate factual basis to level the accusations of misconduct against Ms. Kelly. Indeed, Mr. Lewis never states what, if any, factual investigation he undertook before bringing this claim. This is insufficient to meet his duty to "conduct[] a reasonable and competent inquiry" before filing a pleading.

*Id.* at 7.

In deciding what form of sanctions to impose, the Court found an award of attorney's fees to be warranted in light of the fact that "plaintiff brought suit despite an agreement requiring binding arbitration of employment disputes precisely in order to avoid the expense of litigation." *Id.* The Court then requested that defense counsel submit a declaration detailing the "reasonable fees incurred in defending this action." *Id.* This declaration, in which defense counsel requested $108,717.55 in fees, was submitted on May 13, 2010. *See* Dkt. No. 79.

In an order dated July 12, 2010, the Court awarded attorney's fees to the City. Order, Dkt. No. 85. The Court first found that, in keeping with the "limitations on the appropriate scope of Rule 11 sanctions . . . only the fees incurred in defending against the Second Amended Complaint and the fees related to filing the present request are recoverable." *Id.* at 2. The Court found that plaintiff had been put on notice that the Court had previously "consider[ed] the possibility of imposing sanctions as a result of plaintiff's unsupported claims" when it dismissed the First Amended Complaint in its February 17, 2010 order (Dkt. No. 60). *Id.* The Court then stated, referencing the omission of any claims concerning arbitrator Kelly's previously alleged misconduct, that "[p]laintiff's filing of the Second Amended Complaint confirmed the unsupported nature of those claims." *Id.* The Court, using the "lodestar" method, awarded fees in the amount of $31,618.30 and held Mitchel and Mr. Lewis jointly and severally liable for the full amount. *Id.* at 5.

## IV. The Ninth Circuit Court of Appeal's Decision

Mitchel and Lewis then filed a Notice of Appeal with the Ninth Circuit Court of Appeals in regards to three orders of this Court: (1) the February 17, 2010 Order granting in part and denying in part defendant's motion to dismiss the First Amended Complaint and denying defendant's motion for sanctions (Dkt. No. 60); (2) the April 26, 2010 Order granting defendant's motion to dismiss plaintiff's

6

1 Second Amended Complaint and granting in part defendant's motion for sanctions (Dkt. No. 75); and
2 (3) the July 12, 2010 Order granting defendant's request for attorney's fees (Dkt. No. 85). Notice of
3 Appeal 10-16570, Dkt. No. 86. On December 28, 2011, the Ninth Circuit affirmed the Court's rulings
4 dismissing most of the claims, but reversed the Court's holdings regarding claims 9 and 13, and its
5 imposition of sanctions. Ninth Circuit Memorandum, Dkt. 103. In vacating the imposition of sanctions,
6 the Ninth Circuit stated,

> The district court awarded attorney's fees for defending against the entire SAC, despite justifying the award almost entirely on a single frivolous claim. That claim is only one out of thirteen, and it is a claim not even contained in the SAC. Sanctions should be awarded only for the offending counts in a multi-count complaint . . . Thus, the district court should identify the particular claims in the FAC and SAC that it found sanctionable and should ensure that its sanctions award fits the sanctionable conduct that it identifies.

*Id*. at 7.

Regarding the Court's dismissal of claim 13, the Ninth Circuit stated that, "although the California Superior Court has 'initial jurisdiction' over POBOR claims, California courts have held that this grant of initial jurisdiction 'does not vest the courts with exclusive jurisdiction over an officer's POBOR claims.'" *Id.* at 3 (*citing Lozada v. City & Cnty. of San Francisco*, 52 Cal. Rptr. 3d 209, 220 (Ct. Appl. 2006)). The court then remanded that portion of claim 13 to determine whether the arbitration panel's refusal to consider plaintiff's POBOR claims constituted a ground for vacatur of their decision. *Id.* (*citing* Cal Civ. Code § 1286.2). Revival of a portion of claim 13 necessarily also revived claim 9, which simply seeks temporary and permanent injunctive relief through reinstatement at his job.

The Ninth Circuit also expressly discussed remand. The court stated that,

> With respect to Claim 9 and portions of Claim 13 that the district court dismissed in error, we remand this case to the district court to: 1) determine whether the federal district court should exercise its pendent jurisdiction over these claims or should remand the claims to the state court, *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 651 (9th Cir. 1984) (usually dismissal of federal claims before trial dictates that the pendent state claims should be dismissed); and 2) if the district court does retain jurisdiction over the state claims, determine whether these claims can survive a motion to dismiss on grounds other than abandonment.

Ninth Circuit Memorandum, at 6.

7

**V. Order Remanding Case**

After the Ninth Circuit's decision, plaintiff filed a motion for remand to state court, arguing that, because there were no remaining federal causes of action in the case, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and should remand the case to state court. Dkt. No. 113. The City filed a brief in opposition to that motion. Dkt. No. 115.

On May 16, 2012, the Court issued an Order holding that remand was appropriate on the grounds that the only remaining questions in this case involved an unsettled question of state law – in particular, whether a arbitration panel's error in refusing to hear a plaintiff's POBOR claims constitutes a ground for vacatur of the panel's award. Dkt. 118. Because the question implicates the California POBOR and California Code of Civil Procedure § 1286.2 governing vacatur of an arbitration decision, the Court found that the question properly belongs before a state court. *See* Dkt. 118 at 8 (*citing Millar v. Bay Area Rapid Transit Dist.*, 236 F. Supp. 2d 1110, 1120 (N.D. Cal. 2002) (Brazil, J.) (it is "preferable as a matter of comity (respect for our sister state institutions) for state court judges to apply state law to plaintiff's state-law claims.")).

Also following the Ninth Circuit's decision, the City filed a renewed motion for sanctions, listing particular causes of action in both the FAC and SAC that the City argues the Court should find sanctionable. Def.'s Mot. for Sanctions, Dkt. No. 114. Plaintiff Mitchel has filed an opposition to this motion, supported by a Declaration of his counsel, Mr. Lewis. Dkt. No. 116. The City has filed a reply as well. Dkt. No. 117. In addition, plaintiff has filed a "Motion to Dismiss Sanctions." Dkt. No. 112. No responsive briefing has been filed to the latter motion.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 11, a court may impose sanctions against a party or attorney when a complaint is filed for an improper purpose such as harassment or delay, includes claims that are unwarranted under existing law or a nonfrivolous argument for extension of the law, or contains factual allegations lacking in evidentiary support. Fed. R. Civ. P. 11(b), (c). When evaluating whether a complaint is frivolous or without evidentiary support, the court "must conduct a two-prong inquiry

8

to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation marks and citation omitted).

**DISCUSSION**

In accordance with the Ninth Circuit's decision, defendant now moves for sanctions with respect to particular claims raised in the FAC and the SAC. The Court agrees with defendant that certain claims are sanctionable in each of the complaints, and addresses those in turn. The Court then addresses calculation of the sanctions award.

**I.    Sanctionable Claims in the First Amended Complaint**

In the FAC, plaintiff alleged violations of his constitutional due process right, and conspiracy to violate those rights, pursuant to 42 U.S.C. § 1983. Plaintiff previously asserted identical claims in *Mitchel I*. In the October 7, 2008 *Mitchel I* Dismissal Order ("*Mitchel I* Order"), the Court held that plaintiff could not base a § 1983 claim on a violation of California law. The Court granted leave to properly state a § 1983 claim. Plaintiff reasserted these same claims in his first and fifth causes of action in the FAC, but failed to amend them to allege a violation of federal law. The Court finds, therefore, that plaintiff's first and fifth claims were legally unfounded. His failure to correct the deficiencies before refiling the FAC, despite receiving clear guidance from this Court's *Mitchel I* Order, is sanctionable conduct.

Plaintiff's eighth cause of action in the FAC, Breach of the Duty of Confidentiality – Employer/Employee Relations Ordinance for City, is also identical to a claim previously asserted and dismissed in *Mitchel I*. In that case, the Court dismissed the claim with leave to amend if plaintiff could show he had complied with the California Tort Claims Act. The CTCA requires a party to give notice to a public entity before filing suit against it. In the FAC, plaintiff again failed to allege any evidence that he complied with the CTCA, despite the Court's *Mitchel I* Order. Plaintiff had ample notice and opportunity to cure the legally deficiencies in his original claim, and therefore refiling the same claim in the FAC without proper amendment is sanctionable under Rule 11.

Finally, as discussed in the May 26, 2010 Order awarding sanctions, the Court finds that plaintiff's claim against Ms. Kelly contained in the thirteenth cause of action is sanctionable behavior. In the FAC, plaintiff sought to vacate the arbitration award, in part based on serious but vague allegations that Ms. Kelly had acted improperly in her role as an arbitrator. After being advised by the Court that any such claim against Ms. Kelly needed to be supported by specific factual allegations, plaintiff completely omitted the claim from his SAC. As the Court stated in its May 16, 2010 Order, the most reasonable inference to be drawn is that plaintiff Mitchel and Mr. Lewis never had a legitimate factual basis to level accusations of misconduct against Ms. Kelly. Indeed, in opposing the motion for sanctions, Mr. Lewis never stated what, if any, factual investigation he undertook before bringing this claim. This is insufficient to meet his duty to "conduct[] a reasonable and competent inquiry" before filing a pleading. *Christian*, 286 F.3d at 1127. The Court finds that plaintiff's and Mr. Lewis' actions in filing this claim are sanctionable.[1]

Accordingly, this Court finds plaintiff's first, fifth, eighth and thirteenth causes of action contained in the First Amended Complaint are sanctionable, and therefore grants defendant's motion for fees with regard to these particular claims.

## II. Sanctionable Claims in the Second Amended Complaint

The Court finds that plaintiff's eleventh and twelfth causes of actions contained in the SAC were improperly asserted. Both claims allege violations of POBOR. In the FAC, this Court dismissed these claims with leave to amend to allege compliance with the CTCA. Upon reassertion in the SAC, plaintiff failed to allege that he complied with the CTCA by notifying the City of these claims before he filed the FAC. This Court's FAC Order provided plaintiff with clear notice of this legal deficiency, and his failure to cure before refiling renders the eleventh and twelfth claims sanctionable.

Accordingly, the Court finds that plaintiff's eleventh and twelfth claims as alleged in the SAC are sanctionable, along with the first, fifth and eighth causes of action in the FAC as described above.

Consistent with the Court's April 26, 2010 Dismissal of the SAC, the Court finds that sanctions

---

[1] The Court initially awarded defendant its fees incurred in defending the SAC based on this claim. However, the Ninth Circuit noted in its Memorandum that this claim is not contained in the SAC. Dec. 28, 2011 Ninth Circ. Mem. at 7. The Court therefore awards fees incurred in defending this claim in the FAC.

10

in the form of attorneys' fees incurred in defending against these claims is appropriate. *See* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule . . . may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.").

### III. Attorney's Fees

As a general rule, the amount of reasonable attorneys' fees incurred in litigating an action should be calculated according to the "lodestar" method. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar figure is determined by multiplying "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The party seeking fees must submit evidence supporting the hours worked and the rates requested. *Id.* at 434. In determining the number of hours reasonably expended, the court should exercise its discretion to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id.*

Attorneys' fees imposed as a Rule 11 sanction must arise directly from the cost of defending against the offending pleading(s). Fed. R. Civ. P. 11(c)(4). In other words, the Court may not simply impose the fees expended in defending the entire action, but must take care to itemize the fees requested in order to insure that the "[r]ecovery [does not] exceed those expenses and fees that were reasonably necessary to resist the offending action." *Matter of Yagman*, 796 F.2d 1165, 1185 (9th Cir. 1986). "The measure to be used is not actual expenses and fees but those the court determines to be reasonable." *Id.* (quotation marks and citation omitted).

In keeping with the scope of Rule 11 sanctions, and in accordance with the Ninth Circuit's Memorandum, the Court finds that defendant may be compensated for defending against the particular claims this Court has found sanctionable, as well as all hours preparing associated motions for sanctions and fees. The Court will calculate fees for defending against the FAC and SAC by dividing the number of sanctionable claims by the total number of claims in each complaint: 4/13 and 2/6 for the FAC and SAC, respectively. The Court will then multiply that number by the total hours reported by defendant in defending those respective complaints.

11

**a. Number of Hours**

Defendant has submitted an account of the hours spent defending against the FAC and SAC, as well as its hours spent filing its request for fees. Defendant does not seek compensation for time expended bringing the current motion for attorney's fees.

Defendant also provides different hourly rates for its 2009 and 2010 work. The Court therefore divides out the number of hours between work completed in 2009 and 2010. According to the McClain Declaration, the first motion to dismiss (though not the reply) and the first sanctions motion (though again, not the reply) were filed in 2009. McClain Decl. ¶ 5. The rest of the applicable filings were made in 2010.

Defendant seeks the following hours for each attorney's and paralegal's efforts in defending against the FAC and SAC and in bringing the associated fees requests. As discussed above, the Court reduces the amount sought by the portion of claims the Court finds sanctionable in each complaint:

1. Neville Fernandes: 56.3 hours on motion to dismiss the FAC; 4.9 hours on motion to dismiss reply; 29.8 on first motion for sanctions; 4.6 hours on first motion for sanctions reply.

    **Total Awarded Hours:**

    **2009: (56.3 x 4/13) + 29.8 = 47.1**
    **2010: (4.9 x 4/13) + 4.6 = 6.1**

2. Maureen McClain: 19.3 hours on motion to dismiss the FAC; 23.4 on the motion to dismiss reply; 2.0 hours on first motion for sanctions; 4.6 hours on preparation for appearance on first motions to dismiss and sanctions; 3.0 hours on SAC reply; 1.3 hours on renewed sanctions motion reply; 5 hours on attorney's fees request.

    **Total Awarded Hours:**

    **2009: (19.3 x 4/13) + 2 = 7.9**
    **2010: (23.4 x 4/13) + 4.6 + (3.0 x 2/6) + 1.3 + 5 = 19.1**

3. Constance Norton: 2.6 hours on FAC motion to dismiss; 28.1 on reply; 4.0 hours on first motion for sanctions reply; 27.4 hours on SAC motion to dismiss; 19.1 hours on SAC reply; 6.9 hours on renewed sanctions motion; 7.1 hours on renewed sanctions motion reply.

    **Total Awarded Hours:**

    **2009: (2.6 x 4/13) = 0.8**
    **2010: (28.1 x 4/13) + 4 + (27.4 x 2/6) + (19.1 x 2/6) + 6.9 + 7.1 = 42**

12

|   |   |   |   |
|---|---|---|---|
| 1 | 4. | Pamela Wolpa : | 42 hours on FAC motion to dismiss; 29.5 on reply; 16.3 hours on SAC motion to dismiss; 8.1 hours on SAC motion to dismiss reply; 1.8 hours on renewed sanctions motion reply; 15 hours on attorney's fees request. |

**Total Awarded Hours:**

**2009: (42 x 4/13) = 12.9**
**2010: (29.5 x 4/13) + (16.3 x 2/6) + (8.1 x 2/6) + 1.8 + 15 = 34**

5. Dalene Bramer: 1.0 hours on SAC motion to dismiss.

**Total Awarded Hours:**

**2010: (1.0 x 2/6) = 0.3**

6. Molly Agarwal: 1.2 hours on SAC motion to dismiss reply; 1.3 hours on renewed sanctions motion reply.

**Total Awarded Hours:**

**2010: (1.2 x 2/6) + 1.3 = 1.7**

Mot. for Atty. Fees, Dkt. 114 at 16-21.

Plaintiff does not specifically oppose any of these hours by claiming they are excessive or duplicative. *See* Pls. Opp. to Mot. for Atty. Fees, Dkt. 116. The Court finds that the number of hours claimed by defendant is reasonable in view of the number and complexity of the issues raised in the complaint.

**II. Hourly Rate**

The reasonable hourly rate to be awarded should be determined with reference to the "experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The court "should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* at 1210-11.

For work completed in 2009, defendants seek hourly rates of $305 for Mr. Fernandes; $495 for Ms. McClain; $390 for Ms. Norton; and $155 for Ms. Wolpa. For work completed in 2010, defendants seek $310 for Mr. Fernandes; $495 for Ms. McClain; $410 for Ms. Norton; $160 for Ms. Wolpa; $280 for Ms. Agarwal; $250 for Ms. Bramer. *See* Def.'s Mot. at 16-21. Plaintiff makes no objection to the hourly rates sought.

13

The Court analyzed the hourly rates requested in its July 12, 2010 Order Granting Defendant's Request for Attorney's Fees. *See* Jul. 12, 2010 Order at 3-5. Per the declaration provided with the defendant's original motion for fees in connection with that Order, the Court granted $420.75 for Ms. McClain; $348.50 for Ms. Norton; $238 for Ms. Agarwal; $212.50 for Ms. Bramer; and $136 for Ms. Wolpa. *See* McClain Decl. (Dkt. 85) ¶ 3.[2] The Court believes that those amounts remain appropriate and commensurate with experience.[3] As those rates only reflected 2010 billing rates (because the Court only awarded fees in connection with the 2010 SAC), the Court will reduce the hourly rates for work completed in 2009 by the respective amounts listed in the McClain Declaration: $15 less for Ms. Norton and $5 less for Ms. Wolpa.[4] Factoring in the 15% reduction, this leads to the following 2009 rates: $331.50 for Ms. Norton, and $131.75 for Ms. Wolpa. Mr. Fernandes, who did not work on the motion

---

[2] For Ms. Norton, Ms. Agarwal, Ms. Bramer, and Ms. Wolpa, these amounts reflected a 15% reduction in their usual rates due to the "public entity nature of the client," as defendant suggested in the McClain Declaration. Ms. McClain appeared to have already calculated that reduction into her $420.75 requested rate, down from her usual rate of $495. *See* McClain Decl. ¶ 3(a). It is unclear why, in the instant motion, Ms. McClain has raised her request to the rate of $495; in any event, the Court will again award the reduced rate of $420.75 for work.

[3] As stated in the July 12, 2010 Order, Ms. McClain is a 1974 law school graduate and a partner at Littler Mendelson ("Littler"), the law firm representing defendant in this case, and has practiced defense-side employment litigation for the past 36 years; Ms. McClain is the lead defense counsel in this case. *Id.* ¶ 2a. Ms. Norton is a 1989 law school graduate, is of counsel at Littler, and has practiced employment law in California since 1990. *Id.* ¶ 2b. Ms. Agarwal graduated from law school in 2006 and is an associate at Littler. *Id.* ¶ 2d. Ms. Bramer is a 2009 graduate and an associate at Littler. *Id.* ¶ 2e. Finally, Ms. Wolpa has more than ten years of experience as a paralegal and a degree in Paralegal Studies, and had been primarily responsible for providing paralegal services for this case. *Id.* ¶ 2f.
As set forth in the July 12, 2010 Order, defendant has shown that the hourly rates it seeks for senior attorneys Ms. McClain and Ms. Norton are well in line with the prevailing market rate for similar litigation. *See Campbell v. Nat'l Passenger R.R. Corp.*, --- F.Supp.2d ----, 2010 WL 625362, at 5 (N.D. Cal. Feb. 28, 2010) (finding support for "a market rate from $380 to $775 per hour for experienced employment and civil rights attorneys in the Northern District [of California]" for the years 2006-2009); *Saephan v. Oakland Unified Sch. Dist.*, No. 06-4428 JCS, Feb. 10, 2009 Order, at *5-6 (Docket No. 108) (in employment discrimination case against public entity, awarding $510 per hour for work performed from 2006-2008 by an attorney with 22 years of experience in employment litigation). The rates sought for junior attorneys Ms. Agarwal and Ms. Bramer – who, it is noted, spent minor amounts of time on this case – are also reasonable. *Campbell*, 2010 WL 625362, at *6-7 (awarding between $245 and $275 per hour for junior associates with two years experience). Finally, a rate of approximately $130 per hour is reasonable for Ms. Wolpa's paralegal time. *Id.* at *8 (awarding $160 per hour for paralegal services in 2006-2009); *Saephan* Order at 9 (granting $120 per hour for paralegal work in 2006-2008)

[4] Ms. Mclain states that her time in this matter was billed at the same rate in 2009 and 2010. McClain Decl. ¶ 3(a). The same appears true for Ms. Agarwal and Ms. Bramer. McClain Decl. ¶ 3(d) and (e).

14

to dismiss the SAC and therefore was not awarded fees in the July 12, 2010 Order, shall be awarded $259.25 for his 2009 work and $263.50 for his 2010 work. *See* McClain Decl. ¶ 3(c).[5]

.Accordingly, multiplying the reasonable number of hours stated above by the reasonable hourly rate for each attorney and paralegal, the Court hereby GRANTS defendant's request for attorneys' fees in the following amounts:

**2009:**

| | |
|---|---|
| Mr. Fernandes (47.1 hours x $259.25): | **$12,222.45** |
| Ms. McClain (7.9 hours x $420.75): | **$3,323.93** |
| Ms. Norton (.8 hours x $331.50): | **$265.20** |
| Ms. Wolpa (12.9 hours x $131.75): | **$1,699.56** |

**2010:**

| | |
|---|---|
| Mr. Fernandes (6.1 hours x $263.50): | **$1,607.35** |
| Ms. McClain (19.1 hours x $420.75): | **$8,036.33** |
| Ms. Norton (42 hours x $348.50): | **$14,637.00** |
| Ms. Wolpa (34 hours x $136): | **$4,624.00** |
| Ms. Bramer (.3 hours x $212.50): | **$63.75** |
| Ms. Agarwal (1.7 hours x $238): | **$404.60** |

**TOTAL:** **$46,884.17**

### III.  Division of Liability

As set forth in the July 12, 2010 Order, Rule 11 permits the imposition of sanctions against a party and/or his counsel. Fed. R. Civ. P. 11(c)(1) ("[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."). In determining how to apportion liability, "The ability of a party to pay is one factor a court should

---

[5] Mr. Fernandes was an associate at Littler, before his departure from the firm in February, 2010. He had been practicing law since 2005. *Id.* ¶ 2c. The rate sought by Mr. Fernandes – a mid-level associate with four years experience – is also reasonable. *Campbell*, 2010 WL 625362, at *6-7 (awarding between $245 and $275 per hour for junior associates with two years experience).

consider." *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993). "[T]he sanctioned party has the burden to produce evidence of inability to pay." *Id.* Here, neither plaintiff nor plaintiff's counsel has submitted any evidence indicating that either one is unable to pay the sanctions. The Court accordingly finds that liability for the attorneys' fees sanctions described in this order shall be joint and several. *See Int'l Union of Bricklayers & Allied Craftsmen Local Union No. 20, AFL-CIO v. Jaska*, 752 F.2d 1401, 1407 & n.8 (9th Cir. 1985) (in analogous context of appellate sanctions under Fed. R. App. P. 38, imposing fee sanctions jointly and severally because "attorney and client are in the best position between them to determine who caused" the frivolous filing to be made) (quotation marks and citation omitted).

## CONCLUSION

For the foregoing reasons, and for good cause shown, the Court hereby awards defendant **$46,884.17** in attorneys' fees, to be imposed jointly and severally against plaintiff, James A. Mitchel, and his attorney, Scott A. Lewis, and to be paid within sixty days of the date of this order.

**IT IS SO ORDERED.**

Dated: August 17, 2012

SUSAN ILLSTON
United States District Judge